IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, Plaintiff, vs. ARVESTER EDWARDS, Defendant. | Case No. CR11-2025 REPORT AND RECOMMENDATION |

## TABLE OF CONTENTS

I.   INTRODUCTION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.  PROCEDURAL HISTORY . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III. ISSUES PRESENTED  . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

IV.  RELEVANT FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

V.   DISCUSSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
     A.   Was the Search Warrant Supported By Probable Cause? . . . . . . . . . . 5
     B.   Did the Officers Execute the Search Warrant in Good Faith? . . . . . 10

VI.  SUMMARY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

VII. RECOMMENDATION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

## I. INTRODUCTION

On the 31st day of August 2011, this matter came on for hearing on the Motion to Suppress (docket number 112) filed by Defendant Arvester Edwards on August 19, 2011. The Government was represented by Assistant United States Attorney Patrick J. Reinert. The Defendant appeared in court and was represented by his attorney, John L. Lane.

## II. PROCEDURAL HISTORY

On April 19, 2011, Defendant Arvester Edwards was charged by Indictment with conspiracy to distribute heroin, use or possession of a firearm during a drug crime, and possession of a firearm with an obliterated serial number. At the initial appearance and arraignment on April 20, Defendant entered a plea of not guilty, and trial was scheduled for June 20, 2011. On a motion for a continuance of the trial filed by a co-defendant, the trial was rescheduled for October 17, 2011.

After receiving a two-day extension of time within which to file his motion, Defendant timely filed the instant motion to suppress on August 19, 2011. On August 25, 2011, the Government timely filed its Resistance (docket number 116) to the motion.

## III. ISSUES PRESENTED

Defendant requests that the Court suppress all evidence obtained from the search of his residence at 838 Linden Avenue in Waterloo, Iowa. Defendant asserts that "[t]he search warrant is defective because there was no probable cause to issue it." The Government argues that the warrant was supported by probable cause and, alternatively, that the evidence should not be suppressed because the officers executed the search warrant in good faith.

## IV. RELEVANT FACTS

On February 14, 2011, Officer Bryan Furman of the Cedar Rapids Police Department, who is currently assigned to the DEA Drug Task Force, presented the undersigned magistrate judge with an application for a search warrant for the Linden Avenue residence.[1] I issued a search warrant for the property, and the warrant was executed the next day.

The application and search warrant referred specifically to 838 Linden Avenue in Waterloo. The supporting affidavit, however, referred to sixteen properties to be searched

---

[1] Copies of the application for a search warrant (including the attachments and supporting affidavit), together with the search warrant and the return, were introduced as Government's Exhibit 2.

(including four trailers).[2] The affidavit describes an investigation into drug trafficking activities in Waterloo. The specific allegations referring to the Linden Avenue property are set forth on pages 71-73 of the 89-page affidavit. The affidavit also incorporates by reference affidavits previously submitted to Chief Judge Linda R. Reade in support of Title III telephone intercepts.[3]

Task Force Officer Furman asserts in his affidavit that the Linden Avenue address was believed to be used by Defendant Arvester Edwards to distribute heroin and collect money from heroin trafficking. To support his belief, Furman set forth the following facts:

1. According to a confidential source ("CS"), Defendant "is in a partnership relationship with Arthur SCOTT, both being heroin traffickers in Waterloo, Iowa."

2. The CS purchased heroin from Defendant, and sold Defendant heroin "when he was short of supply."

3. During the investigation, Defendant "has been seen by surveillance meeting with members of the BALL DTO at his residence of 838 Linden Avenue Waterloo, Iowa."

4. On January 20, 2011, authorities observed Lewis Boldon, a "known heroin supplier," arrive "near" Defendant's residence on Linden Avenue and "walk to" Defendant's residence. (Defendant notes that the affidavit does not say Boldon entered the residence or spoke with Defendant on that date.)

5. During a telephone intercept, Defendant was identified as a retail level supplier of heroin in the Waterloo, Iowa area.

6. The investigation revealed that Defendant uses Arthur Scott as a source of supply "to facilitate his heroin trafficking."

7. On January 25, 2011, Defendant exchanged text messages with Scott, which TFO Furman interprets as Defendant "telling SCOTT to supply him with heroin."

---

[2] I also issued separate search warrants for each of the other properties.

[3] Copies of the Title III affidavits were introduced at the hearing as Government's Exhibit 3. There are seven affidavits which, as supplemented, consist of nearly 500 pages.

3

8. On February 7, 2011, a phone call between Defendant and Scott was intercepted, which Furman interprets as Defendant saying that he was getting heroin from Lewis Boldon.

The affidavits submitted in support of the Title III telephone intercepts describe the investigation of drug trafficking activities in Waterloo. Included in the affidavits are descriptions of controlled buys, surveillance, and information obtained from previous wiretaps. Based on the Court's review, it would appear that Defendant is first identified in an affidavit submitted by Special Agent Mark McHugh of the Drug Enforcement Administration on December 10, 2010. McHugh describes a controlled purchase of heroin and Defendant's subsequent receipt of heroin:

> On August 2, 2010, following a controlled purchase of heroin between UC1 and Lucious SIMMONS, surveillance observed SIMMONS parking in front of EDWARDS's residence and go inside. During conversations following their meeting on August 2, 2010, SIMMONS and UC1 discussed the involvement of the subject believed to be EDWARDS receiving heroin from SIMMONS following the August 2nd meeting.

*See* Affidavit of Mark McHugh dated December 10, 2010, ¶ 10(TT) at 17 (docket number 120 at 161).[4]

In the same affidavit, Special Agent McHugh references phone calls between "Target Telephone 12," believed to be used by Arthur Scott, and Defendant:

> Arvester EDWARDS – Between November 15, 2010, and December 1, 2010, with the last contact being on December 1, 2010, there were 34 phone calls between **Target Telephone 12** and (319)464-9989, believed to be used by EDWARDS. EDWARDS is a known heroin distributor in the Waterloo, Iowa area.

*See* Affidavit of Mark McHugh dated December 10, 2010, ¶ 26(A) at 39 (docket number 120 at 183).

---

[4] Task Force Officer Kelly Meggers makes an identical assertion in her affidavits of December 23, 2010 (docket number 120 at 222) and January 11, 2011 (docket number 120 at 92-93).

4

Additional allegations are found in Task Force Officer Kelly Meggers' affidavit dated February 8, 2011. There, Meggers asserts that Defendant, who was previously identified as UM12-00009, "was intercepted in eighty pertinent calls" on a wiretap of a target telephone. The affidavit asserts that "UM12-00009 is believed to be a retail level dealer within the BALL DTO."[5] On January 20, 2011, Defendant spoke with Arthur Scott in an intercepted phone call, which Meggers interprets as Defendant telling Scott that he had OxyContin to trade for heroin, and instructing Scott to contact him when he has heroin for that purpose.[6] On January 23, 2011, Defendant communicated with Scott by a text message, which Meggers interprets as Defendant telling Scott that his competitor – "Junior" – is asking high prices for his heroin due to lack of supply. According to Defendant's text message, "I coulda made a killin when you be back."[7]

The Government has not directed the Court to any other portions of the affidavits referring to Defendant, or relevant activity at 838 Linden Avenue in Waterloo.

## V. DISCUSSION

Defendant argues that the search warrant for his residence was not supported by probable cause. The Government disputes that claim and argues alternatively that the officers executed the search warrant in good faith.

### A. Was the Search Warrant Supported By Probable Cause?

The Fourth Amendment to the United States Constitution protects persons and their houses against unreasonable searches and seizures. "[N]o Warrants shall issue, but upon probable cause, supported by Oath or affirmation." U.S. CONST. AMEND. IV. In making a probable cause determination, "[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons

---

[5] See Affidavit of Kelly Meggers dated February 8, 2011, ¶ 12(CCC) at 18 (docket number 120 at 18).

[6] See id., ¶ 32 at 38 (docket number 120 at 38).

[7] See id., ¶ 33 at 38 (docket number 120 at 38).

5

supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). Stated otherwise:

> If an affidavit in support of a Search Warrant "sets forth sufficient facts to lead a prudent person to believe that there is a 'fair probability that contraband or evidence of a crime will be found in a particular place,'" probable cause to issue the warrant has been established.

*United States v. Grant*, 490 F.3d 627, 631 (8th Cir. 2007) (quoting *United States v. Warford*, 439 F.3d 836, 841 (8th Cir. 2006)). Probable cause "is a fluid concept that focuses on 'the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" *United States v. Colbert*, 605 F.3d 573, 577 (8th Cir. 2010) (quoting *Gates*, 462 U.S. at 231). As such, the Court examines the sufficiency of a search warrant affidavit using a "common sense" and not a "hypertechnical" approach. *Grant*, 490 F.3d at 632 (citing *United States v. Solomon*, 432 F.3d 824, 827 (8th Cir. 2005)). The totality of the circumstances is considered in determining whether probable cause was established to issue a search warrant. *Id.* at 631 (citation omitted).

No oral testimony was presented to me when the search warrant was issued in this case. When an issuing judge relies solely on the written application to issue a search warrant, "only that information which is found within the four corners of the affidavit may be considered in determining the existence of probable cause." *Solomon*, 432 F.3d at 827. Because they are included by reference, the affidavits submitted in support of the Title III telephone intercepts may also be used in determining the existence of probable cause.

The affidavits reflect extensive drug trafficking in Waterloo. Based on the interception of "80 pertinent calls," Defendant was believed to be a dealer in a drug trafficking organization. A confidential source purchased heroin from Defendant, and the confidential source told authorities that Defendant was a partner with Arthur Scott in trafficking heroin. Members of the Ball drug trafficking organization had been seen at

Defendant's residence on Linden Avenue. On January 20, 2011, Defendant spoke with Scott about trading OxyContin for heroin. In a text message on January 23, 2011, Defendant complained about his supplier not having any heroin and stating that "I coulda made a killin." On January 25, 2011, Defendant exchanged additional text messages with Scott, seeking heroin. In a phone call on February 7, 2011, Defendant told Scott that he was getting heroin from Lewis Bolden. Bolden, a known heroin supplier, was seen "walking to" Defendant's house on January 20, 2011. Using a "practical, common-sense" approach, there is probable cause to believe that Defendant was part of a drug trafficking organization.

The fighting issue, however, is whether there was "a fair probability that contraband or evidence of a crime [would] be found in a particular place." *Gates*, 462 U.S. at 238. That is, were there sufficient facts contained in the affidavit to lead a prudent person to believe that there was a "fair probability" that drugs or other evidence of criminal activity would be found in Defendant's residence? *Grant*, 490 F.3d at 631. Stated otherwise, even if there was probable cause to believe that Defendant was a drug trafficker, was there probable cause to believe that contraband or other evidence could be found at his residence?

In his affidavit, Task Force Officer Furman asserts that narcotics traffickers maintain records, notes, and other documents pertaining to the distribution of controlled substances. According to Furman's affidavit, it is common for drug dealers to secrete contraband, proceeds of drug sales, and records of drug transactions in secure locations within their residence. Defendant notes, however, that the affidavit contains no reference to the distribution of drugs in or near Defendant's residence.

In *United States v. Ross*, 487 F.3d 1120 (8th Cir. 2007), the Court gathered cases addressing the issue of whether probable cause to believe that a person is a drug trafficker will also establish probable cause to search his home.

> Although we have not adopted a per se rule to the effect that probable cause to arrest a drug trafficker establishes an

> inference that records, paraphernalia, and other evidence of drug trafficking exists at the trafficker's residence, we have found probable cause to exist in cases in which officers have stated that in their experience such an inference is appropriate and in which a supporting affidavit also described a defendant's continuous course of drug trafficking activity. *See, e.g., United States v. Luloff*, 15 F.3d 763, 768 (8th Cir. 1994). Further, many of our sister circuits have used language that comes even closer to a per se inference. *See, e.g., United States v. Nolan*, 199 F.3d 1180, 1183 (10th Cir. 1999) (citing other circuit decisions recognizing an inference); *United States v. Wiley*, 475 F.3d 908, 912-13 (7th Cir. 2007); *United States v. McClellan*, 165 F.3d 535, 546 (7th Cir. 1999) (noting that a magistrate may reasonably infer that evidence is likely to be found where drug dealers live); *United States v. Feliz*, 182 F.3d 82, 88 (1st Cir. 1999) (stating that it could reasonably be supposed that a drug dealer stored evidence of dealing at his home, though no drug trafficking was observed to occur there); *United States v. Thomas*, 989 F.2d 1252, 1254-55 (D.C. Cir. 1993) (per curiam) (observations of drug trafficking occurring away from dealer's residence can support a finding of probable cause for a search of the dealer's home); *United States v. Angulo-Lopez*, 791 F.2d 1394, 1399 (9th Cir. 1986) (stating that a magistrate may reasonably infer that evidence is likely found where drug dealers live); *United States v. Hodge*, 246 F.3d 301, 306 (3rd Cir. 2001) (finding it reasonable to search an experienced and repeat dealer's home).

*Ross*, 487 F.3d at 1123. (The *Ross* Court did not decide whether the search warrant affidavit provided a sufficient nexus between the defendant's residence and the drug conspiracy, because "the *Leon* good-faith exception saves the evidence from suppression under the facts of this case." *Id.* at 1122.)

Also instructive is *United States v. Keele*, 589 F.3d 940 (8th Cir. 2009). There, the defendant was involved in a single car accident. A black bag in the defendant's possession contained drugs and drug paraphernalia. A special agent with the Iowa Division of Narcotics Enforcement obtained a search warrant for the defendant's residence. In ruling on the defendant's subsequent motion to suppress, the district court found that

while the search warrant was not supported by probable cause, the evidence was nonetheless admissible under the *Leon* good-faith exception. According to the district court, the search warrant application did not establish probable cause "because it failed to establish a sufficient 'nexus between the auto search and the residence search other than the defendant's ownership of the home.'" *Id.* at 943. The Court of Appeals affirmed the district court's denial of the defendant's motion to suppress, but also found that probable cause existed for the issuance of the warrant.

> Here, evidence of drug manufacturing and distribution was recovered from the accident scene. It was linked to [the defendant's] residence through the experienced opinion of Agent Stepleton that drug manufacturers often keep contraband and proceeds at their personal residences. After according deference to the magistrate judge's determination, we determine that the magistrate had a "substantial basis for concluding that probable cause existed."

*Keele*, 589 F.3d at 944 (quoting *United States v. Montes-Medina*, 570 F.3d 1052, 1059 (8th Cir. 2009)).

The affidavits submitted in this case established that Defendant was actively trafficking heroin in Waterloo. He had sold heroin to a confidential source. Members of a drug trafficking organization had been seen at his residence. In an intercepted phone call, Defendant stated that he was purchasing heroin from Lewis Bolden, who was seen during surveillance "walking to" Defendant's residence. Defendant complained in a text message regarding his inability to purchase heroin, stating that "I coulda made a killin." Task Force Officer Furman stated that based on his experience, drug dealers commonly maintain drugs, drug proceeds, and records at their home. While the allegations regarding the Linden Avenue property may be considered "bare bones," viewing all of the circumstances set forth in the affidavits in a "practical, common-sense" manner, I believe that they established a "fair probability" that drugs or evidence of a crime would be found in Defendant's residence. *Keele*, 589 F.3d at 944. Accordingly, I believe that the search warrant issued on February 14, 2011, was supported by probable cause.

## B. *Did the Officers Execute the Search Warrant in Good Faith?*

As set forth above, I believe that the search warrant issued on February 14, 2011, was supported by probable cause. Accordingly, it is unnecessary to consider the Government's alternative argument: that because the officers relied in good faith on the warrant when executing the search, the evidence should not be suppressed. Nonetheless, I will address the issue in case the district court disagrees with my analysis on probable cause.

The Constitution does not expressly prohibit the introduction of evidence obtained in violation of the Fourth Amendment. *United States v. Leon*, 468 U.S. 897, 906 (1984). Rather, the exclusionary rule is "a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved." *Id.* (quoting *United States v. Calandra*, 414 U.S. 338, 348 (1974)). The Court noted in *Leon* that it "frequently questioned whether the exclusionary rule can have any deterrent effect when the offending officers acted in the objectively reasonable belief that their conduct did not violate the Fourth Amendment." *Id.* at 918. After reviewing the purposes of the exclusionary rule, the Court concluded that "evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant" would not be suppressed. *Id.* at 922. An officer's reliance on a search warrant is not "objectively reasonable," however, if one of four circumstances is present:

> The Supreme Court has identified four circumstances in which an officer's reliance on a search warrant would be objectively unreasonable: (1) when the affidavit or testimony in support of the warrant included a false statement made knowingly and intentionally or with reckless disregard for its truth, thus misleading the issuing judge; (2) when the judge "wholly abandoned his judicial role" in issuing the warrant; (3) when the affidavit in support of the warrant was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; and (4) when the warrant is "so facially deficient" that the executing officer could not reasonably presume the warrant to be valid.

*Grant*, 490 F.3d at 632-33 (citing *Leon*, 468 U.S. at 923).

10

In its resistance to Defendant's motion to suppress, the Government asserted that the officers objectively relied in good faith on the warrant, citing *Leon*. Defendant did not file a reply to the Government's argument that the good faith exception in *Leon* applies to the execution of the February 14 search warrant at Defendant's residence. Accordingly, the Court is left to speculate as to the reasons why Defendant may believe that the good faith exception in *Leon* is inapplicable. Because Defendant has not asserted a *Franks* claim, however, the Court assumes that the first alternative is not being asserted.[8] In addition, Defendant apparently does not claim that I "wholly abandoned" my judicial role in issuing the search warrant; thereby precluding Defendant from prevailing on the second alternative. Furthermore, Defendant does not point to any "facial deficiencies" in the warrant and, therefore, the fourth alternative does not apply.

The only possible alternative which may be cited in support of Defendant's position is the third one. That is, Defendant could presumably argue – although he did not do so here – that the affidavit submitted in support of the warrant was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." In *Ross*, the Court noted that "'entirely unreasonable' is not a phrase often used by the Supreme Court, and we find nothing in *Leon* or in the Court's subsequent opinions that would justify our dilution of the Court's particularly strong choice of words." 487 F.3d at 1122-23 (quoting *United States v. Carpenter*, 341 F.3d 666, 670 (8th Cir. 2003)). For the reasons set forth above, I believe that the affidavit established probable cause to search Defendant's residence. Even if the district court finds that probable cause was lacking, however, it was not "so lacking" that the officers' reliance on the search warrant was "entirely unreasonable." *See also United States v. Gibson*, 928 F.2d 250, 253 (8th Cir. 1991) ("Ordinarily, a police officer cannot be expected to question a judge's probable cause determination."). Accordingly, the officers executing the search had an "objectively

---

[8] *See Franks v. Delaware*, 438 U.S. 154 (1978).

reasonable reliance" on the validity of the warrant and, even if the warrant is now determined to be lacking, the evidence should not be suppressed. *Leon*, 468 U.S. at 922.

## VI. SUMMARY

In summary, I believe that the search warrant issued for Defendant's residence on Linden Drive in Waterloo was supported by probable cause. Even if the search warrant was not supported by probable cause, however, I believe that the officers had an objectively reasonable reliance on the search warrant, thereby precluding application of the exclusionary rule. Therefore, Defendant's motion to suppress should be denied.

## VII. RECOMMENDATION

For the reasons set forth above, I respectfully recommend that the Motion to Suppress (docket number 112) filed by Defendant Arvester Edwards on August 19, 2011 be **DENIED**.

The parties are advised, pursuant to 28 U.S.C. § 636(b)(1), that within fourteen (14) days after being served with a copy of this Report and Recommendation, any party may serve and file written objections with the district court. *The parties are reminded that pursuant to Local Rule 72.1, "[a] party asserting such objections must arrange promptly for a transcription of all portions of the record the district court judge will need to rule on the objections." Accordingly, if the parties are going to object to this Report and Recommendation, they must promptly order a transcript of the hearing held on August 31, 2011.*

DATED this 7th day of September, 2011.

JON STUART SCOLES
UNITED STATES MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA